IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| ANGELA STEINHARDT, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 1:25-cv-00303 |
| ALBERTAI.CLICK, LENA DOE, § | JUDGE MICHAEL J. TRUNCALE |
| AND JOHN DOES 1 – 20, § | |
| § | |
| *Defendants*. § | |
| § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR *EX PARTE*
TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING
EXPEDITED DISCOVERY**

Plaintiff has filed a Motion for *Ex Parte* Temporary Restraining Order and Order Authorizing Expedited Discovery (the "Motion"), in which seeks an order requiring the freezing of Defendants' assets, and authorization to issue subpoenas to various third parties likely to be in possession of information about the Defendants. The Court has reviewed Plaintiff's Motion and finds that, for the reasons set out therein, she faces a risk of irreparable harm if the requested relief does not issue and notice to the Defendants should not be required. Accordingly, Plaintiff's Motion is hereby GRANTED.

I. **Background**

Plaintiff's relevant allegations are as follows. In January of 2025, Lena Doe contacted Angela Steinhardt ("Dr. Steinhardt") through WhatsApp and gained her trust by patiently building a professional relationship. Complaint ¶¶13 – 18. She assisted her in making an account on the albertAI.click

platform, and "trained" her for a new position. *Id*. Dr. Steinhardt began working and was even able to withdraw funds, making the platform appear legitimate. *Id*.

But when Dr. Steinhardt attempted to withdraw her $800,000 "Lucky 7 Anniversary Celebration" commission, she was told she needed to pay various fees in the amount of $372,000. *Id*. Dr. Steinhardt paid these fees but was still unable to retrieve any of her funds. Dr. Steinhardt then realized she had been the victim of a scam. *Id*.

Evidentiary materials submitted by Dr. Steinhardt suggest that these kinds of investment scams are now amongst the most prevalent forms of cybercrime worldwide. ECF No. 2, Ex. 1, Declaration of Evan Cole (henceforth "Cole Declaration"), ¶¶ 3 – 4 (providing literature regarding pig-butchering scam epidemic).

After retaining counsel, Dr. Steinhardt's blockchain investigator performed a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. Cole Declaration, ¶ 5. Dr. Steinhardt's investigator was able to trace her allegedly stolen assets to cryptocurrency-exchange accounts that ultimately received the assets she alleges were stolen from her (together the "Target Accounts"). The Target Accounts are as follows:

| **Recipient in Transactions** | **Associated Entity** | **Amount Traced (in USD)** |
|---|---|---|
| 0xb4f1c7058ea35690087114f5058ab5b381ce190f8dc072ff6504e722beceec7e<br><br>0x6d1305207103561117cb450ef12362e104722ba8186bfd8f4382277713705c0a | Bitget | $100,800.00 |
| 0x37e64011b6b6fd8c01db2ee13ce9450562ab4eaf7cee75589ba47712efa4a77c<br><br>0x6cb1f65d97af4d548f839a0343ed7863d2d09963f81f646f1da52c2697bbc468<br><br>0x3c44e4de6499cb3bbaea23bc9f8f8e821eba2a3e470fb01325fd1b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a8f2218c6b9dc9369521ca2058845c4ccba0d37fa<br><br>0x47af66805c960997a3beb50e4285d782546cfdeb6737f01547e4f0238b29886e | Binance | $170,000.00 |
| 0x4cfa7699ade24901b9ae36b6c40fe93b0fb1e8936ac9b676e67ad54df050b92d | Coinbase | $20,000.00 |

In the instant Motion, Dr. Steinhardt asks the Court to order that these cryptocurrency-exchange accounts be temporarily frozen, so that she might preserve some assets for recovery. In addition, through investigation, Dr. Steinhardt has identified additional third parties she claims are likely to be in possession of information about the Defendants. Her Motion seeks to

- 3 -

issue subpoenas to these third parties, with the aim of revealing the Defendants' true identities and unearthing contact information that she might subsequently use to serve or otherwise communicate with them.

## II. Analysis

Dr. Steinhardt has met the requirements for issuance of a temporary restraining order and expedited discovery for the following reasons.

### A. Temporary Restraining Order

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an Declaration or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." FED. R. CIV. P. 65(b)(1)(A)-(B).

Both requirements are met here. Dr. Steinhardt's Complaint, the Cole Declaration, and the blockchain-tracing report show the likelihood of immediate and irreparable injury or loss. These materials suggest that Dr. Steinhardt was in fact the victim of a prevalent form of cybercrime—the "pig-butchering scam"—which features well-established and recognizable patterns of deception. *See* Complaint, ¶¶ 13 – 18; Cole Declaration, ¶¶ 3 – 4 (concluding that Dr. Steinhardt was the victim of a pig-butchering scam and providing literature for comparison). The Cole Declaration further details

how the assets allegedly stolen from Dr. Steinhardt could be further transferred to unretrievable locations at any time, with the click of a button. Cole Declaration, ¶ 7. Several federal courts, including this Court, have found that this exigency justified issuance of *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[1]

In addition, Dr. Steinhardt's attorney has certified why notice should not be required. As Dr. Steinhardt points out in her Motion, the Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). Under

---

[1] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT (E.D. Tex.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case); *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Several courts have found that this same reasoning justified issuance of *ex parte* freezing orders in crypto-fraud cases analogous to this one.[2]

Here, the thrust of Dr. Steinhardt's allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority. While at this stage these are simply allegations, Dr. Steinhardt has provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets

---

[2] *See, e.g.*, *Gaponyuk v. Alferov*, No. 223CV01317KJMJDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

if they were given notice of this motion. This is sufficient to justify issuance of an *ex parte* order under these unique circumstances.

Having found that the procedural requirements for issuance of an *ex parte* restraining order are met, the Court now turns to the substantive standard. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

Dr. Steinhardt has met each of these requirements. On the merits, Dr. Steinhardt makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. Complaint, ¶¶ 15 – 27. She has alleged and provided evidence that the Defendants deceived her and misappropriated her assets in what appears to have been an intentional scam. Complaint, ¶¶ 19 – 31; Cole Declaration, ¶¶ 3 – 5. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that she will indeed be able to prevail on these claims once a full evidentiary record is developed. In addition, the Court notes that asset freeze Dr. Steinhardt seeks in this instance is permissible in light of her request for a constructive trust over specific, traceable stolen

assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Dr. Steinhardt has also shown that irreparable harm will ensue absent the restraining order she seeks, for the same reasons explained above. In light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that Dr. Steinhardt's request to freeze the Targeted Addresses to which those assets were transferred is justified, as have other courts in similar cases. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to Dr. Steinhardt outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. Maintaining the assets at the Targeted Addresses is perhaps Dr. Steinhardt's only realistic chance at a future recovery in this case. In contrast, the Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only

minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court")."

Finally, the Court finds that issuing the injunction is in the public interest. Dr. Steinhardt has adduced evidence showing that she is but one of many victims of what appears to be an epidemic of similar scams. Ex. 1, Cole Declaration, ¶¶ 3 – 6. A freezing order will serve the public interest here both by dissuading would-be fraudsters from preying on American citizens and providing assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g., Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### B.    Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." FED R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order." *Id*. Courts in this circuit apply a "good cause" standard to determine whether such an order should issue. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard). Good cause may be found where "the need for expedited discovery

in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 239.

Many courts, including this Court, have authorized expedited discovery in cryptocurrency-related fraud cases like this one.[3] Indeed, in similar cases, courts have held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them. *Gaponyuk*, 2023 WL 4670043, at *4 (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

Here, Dr. Steinhardt's proposed discovery arises from her pre-suit blockchain tracing. These investigations revealed third parties likely to be in possession of information about the Defendants. Each of those third parties and their alleged connections to this case are set out below.

---

[3] *See, e.g.*, *Harris*, No. 1:24-cv-00313-MJT, at p. 9 (authorizing expedited discovery); *Strivelli v. Doe*, No. 22-cv-22060 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges in crypto case and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants"); *Licht*, 2023 WL 4504585, at *4 (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request").

| *Subpoena Target* | *Connection to Case* |
|---|---|
| Coinbase | Plaintiff's assets were allegedly traced to a deposit address or addresses at this exchange. |
| Bitget | Plaintiff's assets were allegedly traced to a deposit address or addresses at this exchange. |
| Binance | Plaintiff's assets were allegedly traced to a deposit address or addresses at this exchange. |
| NameSilo | NameSilo is alleged to be the domain registrar for one of the defendants' web domains. |
| Tucows | Tucows is alleged to be the domain registrar for one of the defendants' web domains. |
| Cloudflare | Plaintiff alleges that the defendants' web domains used Cloudflare's content-delivery services. |
| WhatsApp | Defendants allegedly used WhatsApp to communicate with Ms. Steinhardt. |

Dr. Steinhardt requests the Court's authorization to issue subpoenas to each of the above-listed entities seeking the following information. Dr. Steinhardt seeks to discover all biographical and contact information associated with the Defendants' accounts. She also seeks to discover IP-address and location logs showing the devices and locations from which the Defendants accessed these accounts.

Dr. Steinhardt also seeks to discover any payments information in the subpoena targets' possession, including the Defendants' transaction histories and information about the credit or debit cards the Defendants used to pay for the subpoena targets' services. As to the Defendants' payment methods, Dr. Steinhardt seeks only information sufficient to identify the Defendants' payments provider and the Defendants' account with that provider.

Courts have authorized similar discovery where the plaintiff adduced evidence that the persons about whom the information was sought were cybercriminals and the plaintiff also sought a temporary restraining order freezing the assets held in those accounts. *Strivelli*, 2022 WL 1082638, at *2 (granting broad expedited discovery in functionally identical crypto-fraud case); *see also Licht*, 2023 WL 4504585, at *4 (same). The Court finds these courts' reasoning persuasive and therefore authorizes the scope of discovery requested by Dr. Steinhardt here.

### III.    Relief Granted

#### A.    Restraining Order

For the reasons set out in the Motion, the Court finds that the assets located at the Target Accounts should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation,

subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Target Accounts, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Accounts.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

**IV.     Expedited Discovery**

The Court finds that Plaintiff's request to issue expedited discovery should be granted for the reasons set out in the Motion. Plaintiff is authorized to serve subpoenas on the legal entities associated with following third parties:

- Coinbase
- Bitget
- Binance
- NameSilo
- Tucows
- Cloudflare
- WhatsApp

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel within fourteen (14) days of their receipt of Plaintiff's subpoena and this Order.

The Court finds that any privacy interest the Defendants have in the documents requested by Plaintiff is outweighed by the need to investigate and prosecute the theft and conversion alleged in the complaint. Such privacy concerns shall not be good cause for the subpoenaed party to withhold the requested material.

Dated: June 16, 2025

Prepared By:

THE HODA LAW FIRM, PLLC

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
Alexander J. Crous, Esq.
Tx. Bar No. 24136488
12333 Sowden Road, Suite B
PMB 51811
Houston, TX 77080
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorneys for Plaintiffs*