## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| Angela Steinhardt, | |
| *Plaintiff,* | Case No. 1:25-cv-00303-MJT |
| v. | |
| albertAI.click, Lena Doe, and John Does 1 – 20, | **Plaintiff's Motion for Preliminary Injunction** |
| *Defendants.* | |

Plaintiff, Dr. Angela Steinhardt, hereby requests that the Court enter a preliminary injunction extending the relief granted in the extant Temporary Restraining Order. In support, she shows the Court as follows.

### I.    Preliminary Statement

The Defendants are foreign cybercriminals who stole from Dr. Steinhardt in a pig-butchering scam. On June 16, 2025, the Court issued a Temporary Restraining Order freezing several cryptocurrency exchange accounts to which Dr. Steinhardt's assets were ultimately transferred. Dr. Steinhardt respectfully requests that the Court issue a preliminary injunction extending the account freeze through trial.

- 1 -

## II.    Factual Allegations

Dr. Steinhardt's Complaint and her motion for the extant TRO detailed her relevant allegations against the Defendants.[1] This Motion will avoid repetition, insofar as possible, by focusing on the evidence submitted in support of this Motion and recent developments.

### A.    The Scam

The Defendants are a syndicate of foreign cybercriminals who stole $372,000.00 from Dr. Steinhardt in a pig-butchering employment scam.[2] The Cole Declaration explains why there is no doubt that the Defendants are, in fact, scammers.[3] It does so by comparing Dr. Steinhardt's allegations and evidence to a recent report detailing this type of employment scam. Dr. Steinhardt's case is a direct analog to the cases discussed in the study, as evidenced by the method of initial contact, the "phases" in which the scam progressed, the degree of emotional engineering involved, and the nature of the fraudulent employment platform used to legitimize the scam.[4]

### B.    Blockchain Tracing

At the outset of this case, Dr. Steinhardt's investigator determined that a portion of Dr. Steinhardt's assets were funneled by the alleged scammers to

---

[1] Dkt. 1, Complaint ("Compl."); Dkt. 2, Motion for Temporary Restraining Order.

[2] Compl., ¶¶ 13 – 18.

[3] Ex. 1, Declaration of Evan Cole ("Cole Declaration"), ¶¶ 3 – 4.

[4] *Id.*

- 2 -

deposit addresses at the cryptocurrency exchanges Binance, Coinbase, and Bitget (the "Receiving Exchanges").[5] Dr. Steinhardt sought a Temporary Restraining Order requiring that the Receiving Exchanges freeze the user accounts that received her assets (the "Target Accounts"). The Target Accounts are as follows:[6]

| Recipient in Transactions | Associated Entity | Amount Traced (in USD) |
|---|---|---|
| 0xb4f1c7058ea35690087114f 5058ab5b381ce190f8dc072ff6 504e722beceec7e<br><br>0x6d1305207103561117cb45 0ef12362e104722ba8186bfd8f 4382277713705c0a | Bitget | $100,800.00 |
| 0x37e64011b6b6fd8c01db2ee 13ce9450562ab4eaf7cee7558 9ba47712efa4a77c<br><br>0x6cb1f65d97af4d548f839a03 43ed7863d2d09963f81f646f1 da52c2697bbc468<br><br>0x3c44e4de6499cb3bbaea23b c9f8f8e821eba2a3e470fb0132 5fd1b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a 8f2218c6b9dc9369521ca2058 845c4ccba0d37fa<br><br>0x47af66805c960997a3beb50 e4285d782546cfdeb6737f015 47e4f0238b29886e | Binance | $170,000.00 |

---

[5] Cole Declaration, ¶ 5.

The Court issued a TRO to this effect,[6] and subsequently extended it by fourteen days.[7] Upon being served with the Court's Order, Binance implemented freezes of several user accounts. Binance has not, however, provided Dr. Steinhardt with a document production in relation to those accounts as of the date of this filing.

A person named Suphakorn Saechua, apparently a Thai citizen, reached out to Ms. Steinhardt's counsel by email about a Binance account freeze on July 3, 2025. This person's correspondence did not provide enough information to determine whether the frozen account was frozen in this matter or one of counsel's other matters in which Binance accounts have been frozen. Nevertheless, counsel responded to this email providing notice of the upcoming preliminary injunction hearing in this case and seeking additional information. Counsel has not received a response as of the date of this filing. Bitget was also served with the TRO and a subpoena but has not responded to counsel in any manner as of the date of this filing.

---

[6] Dkt. 3, Order Granting Plaintiff's Motion for Temporary Restraining Order. The TRO also ordered the freezing of an account at Coinbase, at Dr. Steinhardt's request. Coinbase implemented an account freeze in response to the Court's order and also provided a document production. This production revealed that the account in question was in fact Dr. Steinhardt's own account, where she had received a "credibility withdrawal" from the scammers as part of their artifice. Accordingly, Dr. Steinhardt does not request that the Coinbase account freeze be extended.

[7] Dkt. 5, Order Granting Motion to Extend Temporary Restraining Order.

### III.    Relief Sought

Dr. Steinhardt seeks a preliminary injunction ordering that the Target Accounts remain frozen through trial. The balance of this Motion will explain why Dr. Steinhardt has satisfied the applicable requirements.

> *1.    Dr. Steinhardt provided the Defendants notice of the injunction hearing and this Motion.*

Under the Federal Rules, "the court may issue a preliminary injunction only on notice to the adverse party."[8] This rule "does not require service of process, but rather requires notice to the adverse party."[9] As the Eleventh Circuit recently noted, "there is a reason Rule 65 allows emergency injunctive relief before service of process."[10] Holding that a preliminary injunction could not issue "before service of process on a defendant abroad would mean that plaintiffs could not obtain initial relief from impending or ongoing harm … for months or even years as the Hague Convention service or alternative service process unfolded."[11]

Dr. Steinhardt provided notice of the upcoming preliminary-injunction hearing to the Defendants on July 3, 2025. She did so by (i) sending notice and a link to the public docket to three WhatsApp numbers associated with

---

[8] FED. R. CIV. P. 65(a)(1).

[9] *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)).

[10] *Sec. & Exch. Comm'n v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024).

[11] *Id.*

Lena Doe and Albert.ai used to communicate with her and (ii) providing notice of the hearing by email to the individual who wrote to Dr. Steinhardt's counsel concerning a frozen Binance account.[12]

  2. *Dr. Steinhardt has met the substantive requirements for issuance of a preliminary injunction.*

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[13] Dr. Steinhardt has met these requirements for the reasons set out below.

*Element 1: The Merits.* Dr. Steinhardt alleges that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Dr. Steinhardt is likely to succeed on the merits of each of these claims.[14]

*RICO Claim.* To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that such injury was caused by the RICO

---

[12] Hoda Declaration, ¶ 3.

[13] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[14] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Dr. Steinhardt is a resident of Massachusetts. The Court should thus apply Massachusetts law to Dr. Steinhardt's common-law conversion and fraud claims.

violation.[15] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[16] who engaged in (2) a pattern[17] of racketeering activity,[18] (3) connected to the acquisition, establishment, conduct or control of an enterprise.[19]

Dr. Steinhardt's RICO claim is likely to succeed. Her Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[20] (2) explaining their pattern of wire fraud,[21] and (3) recounting the injuries she suffered as a direct result of the Defendants' racketeering scheme.[22] The Complaint shows that the Defendants' scheme was the very definition of an enterprise created solely

---

[15] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[16] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[17] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[18] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[19] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[20] Compl., ¶¶ 13 – 18.

[21] *Id.*

[22] *Id.*

to perpetrate a pattern of wire fraud, and on a global scale.[23] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[24]

*Conversion Claim.* To prevail on a conversion claim, a plaintiff must show that the defendant "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time."[25] Dr. Steinhardt's conversion claim is likely to succeed. Her Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Dr. Steinhardt's assets and have not returned them.[26] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in in crypto-fraud cases.[27]

---

[23] *Id.*

[24] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[25] *Grand Pac. Fin. Corp. v. Brauer*, 783 N.E.2d 849, 857 (Mass. App. 2003).

[26] Compl., ¶¶ 13 − 18.

[27] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or

*Fraud Claim.* To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.[28]

Dr. Steinhardt's fraud claim is likely to succeed. Her Complaint shows that that the Defendants intentionally and falsely represented that Dr. Steinhardt was trading cryptocurrency on a legitimate platform with the intention of causing Dr. Steinhardt to transfer her assets to the Defendants' control, that these statements were material to her, and that she acted on the Defendants' misrepresentations to her detriment.[29]

*Element 2: Irreparable Harm.* Dissolution of the extant asset freeze would cause irreparable harm. Cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.[30] And while courts can order the freezing and disgorgement of crypto assets held at exchange-based addresses, most assets held in "self-custody" or at non-compliant exchanges are beyond the effective reach of such

---

ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[28] *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (Mass. 2017).

[29] Compl., ¶¶ 13 – 18.

[30] Cole Declaration, ¶ 6 (explaining the risk of irreparable harm in cryptocurrency-related fraud cases).

orders.[31] The tracing of Dr. Steinhardt's assets to their present location provides a unique and fleeting opportunity to restrain further dissipation while Dr. Steinhardt moves this case toward resolution. Courts have consistently recognized that these features of blockchain technology justify the issuance of freezing orders in crypto-fraud cases.[32]

*Element 3: Balancing.* The threatened injury to Dr. Steinhardt outweighs any damage a freezing order might cause to the Defendants. Dr. Steinhardt has lost her life savings, and the order she seeks is her only hope of preserving some assets for recovery. And while an asset freeze might cause temporary inconvenience to the restrained persons, any restraint implemented can be undone should future developments require.[33] In

---

[31] *Id.*

[32] *See, e.g., Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[33] *See, e.g., Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to

addition, as detailed above, the Defendants have received notice of this proceeding.[34] If they so choose, they are free to contest the issuance of the injunction at the upcoming hearing or to seek to have the injunction dissolved at any point before final judgment.

   *Element 4: Public Interest.* A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Dr. Steinhardt.[35] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[36] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[37] In this case, the public interest weighs heavily in favor of the requested injunction. In 2024 alone, pig-butchering scammers stole more than $5 billion from *tens of thousands* of American victims. The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of injunctive relief.

---

transfer the allegedly purloined assets into other accounts beyond the reach of this court").

   [34] Hoda Declaration, ¶ 3.

   [35] *Licht*, 2023 WL 4504584, at *3.

   [36] *Id*.

   [37] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

3.    *The Court has the authority to issue the asset-freezing injunction Dr. Steinhardt seeks.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff has brought his claims to judgment.[38] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive trust over traceable stolen assets.[39] Dr. Steinhardt seeks just such relief here.[40] For that reason, the Court has the authority to issue the asset-freezing injunction Dr. Steinhardt seeks.

4.    *The Court should not require a bond.*

Rule 65(c) provides that a court issuing a preliminary injunction should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[41] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[42] The

---

[38] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

[39] *See, e.g., Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[40] Dkt. 1, ¶ 76.

[41] FED. R. CIV. P. 65(c).

[42] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

- 12 -

Defendants will not suffer any damages due to the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Dr. Steinhardt thus requests that the Court decline to impose a bond.

## IV.    Conclusion

For the reasons set out above, Dr. Steinhardt has met the standards for issuance of a preliminary injunction. Accordingly, she requests that the Court issue grant relief in substantially the form of the proposed order submitted with this Motion.

Dated:  July 7, 2025                    Respectfully submitted,

THE HODA LAW FIRM, PLLC



Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
Alexander Crous, Esq.
Tx. Bar No. 24136488
3120 Southwest Fwy
Ste 101, PMB 51811
Houston, TX 77080
marshal@thehodalawfirm.com
alex@thehodalawfirm.com
o. (832) 848-0036

*Attorneys for Plaintiff*