UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| ANGELA STEINHARDT, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 1:25-CV-00303 |
| ALBERTAI.CLICK, LENA DOE, § | JUDGE MICHAEL J. TRUNCALE |
| JOHN DOES 1 – 20, § | |
| § | |
| *Defendants*. § | |
| § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff's Motion for Preliminary Restraining Order (the "Motion"). On June 16, 2025, the Court granted Plaintiff's request for a 14-day TRO freezing cryptocurrency exchange accounts that she alleges received assets that were stolen from her by the defendants in this matter. Dkt. 3. The Court subsequently extended that TRO for another 14 days. Dkt. 5. Plaintiff now seeks to extend this account freeze through trial.

The Court has reviewed Plaintiff's Motion and evidentiary materials. For the reasons set out below, Plaintiff's Motion is hereby **GRANTED**.

### I.  Background

Plaintiff's relevant allegations are as follows. In January 2025, Plaintiff applied for an advertised part-time position as a medical director with a plasma company. Complaint, ¶¶ 13. Shortly thereafter, an individual named Lena contaced Plaintiff via WhatsApp and provided details about a

different position involving purchasing merchant products and writing reviews to boost their e-commerce scores. *Id*. Lena convinced Plaintiff to proceed by promising a salary of up to $8,000 per month.

At Lena's direction, Plaintiff created an account on the albertAI.click platform and was "trained" for her new position by Lena. Plaintiff was then informed that she had been given a "lucky order" which promised up to ten times her commission. Lena explained that Plaintiff needed to "top up" her reserve account in order to be eligible for this "lucky order." Plaintiff then deposited $35 of her own money after being told that it was temporary and she would be able to withdraw her deposit plus commission later on.

Over the next several months, Plaintiff continued to work for the fraudlent entity posing as Albert AI. Plaintiff was allowed to make occassional withdrawals over time, which provided an illusion of legitimacy to the company.

During this period, Plaintiff was informed that she won a "Lucky 7 Anniversary Celebration" bonus, which represented a commission of almost $800,000. In late February 2025, Plaintiff attempted to withdraw these earnings but was unable. Defendants representing themselves as the "Albert AI Finance Department" then informed Plaintiff that in order to access her funds she needed to pay (1) insurance fees in the amount of $71,000, (2) large transaction verification deposits in the amount of $200,000, and (3) exchange fees in the amount of $101,000.

After paying these "fees," Plaintiff was still unable to access her funds. Sensing she had been scammed, Plaintiff contacted the real Albert AI, who then confimed her suspicions by informing her that albertAI.click was not associated with Albert AI. In total, Plaintiff alleges that she lost $372,000 to the scammers.

After retaining counsel, Plaintiff's blockchain investigator performed a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. Ex. 1, Cole Declaration, ¶ 5. Plaintiff's investigator was able to trace her allegedly stolen assets to cryptocurrency-exchange accounts that ultimately received the assets she alleges were stolen from her (together the "Target Accounts"). The Target Accounts are as follows:

| Recipient in Transactions | Associated Entity | Amount Traced (in USD) |
|---|---|---|
| 0xb4f1c7058ea35690087114f5058ab5b381ce190f8dc072ff6504e722beceec7e<br><br>0x6d1305207103561117cb450ef12362e104722ba8186bfd8f4382277713705c0a | Bitget | $100,800.00 |
| 0x37e64011b6b6fd8c01db2ee13ce9450562ab4eaf7cee75589ba47712efa4a77c<br><br>0x6cb1f65d97af4d548f839a0343ed7863d2d09963f81f646f1da52c2697bbc468 | Binance | $170,000.00 |

| | | |
|---|---|---|
| 0x3c44e4de6499cb3bbaea23bc9f8f8e821eba2a3e470fb01325fd1b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a8f2218c6b9dc9369521ca2058845c4ccba0d37fa<br><br>0x47af66805c960997a3beb50e4285d782546cfdeb6737f01547e4f0238b29886e | | |

In the instant Motion, Plaintiff asks the Court to order that these cryptocurrency-exchange accounts be frozen through trial, so that she might preserve some assets for recovery.

**II.   Analysis**

Plaintiff has met the requirements for issuance of a Preliminary Injunction for the following reasons. First, Plaintiff has shown that the Defendants had notice of her Motion and this hearing as required under Federal Rule of Civil Procedure 65(a)(1). The Hoda Declaration describes the methods used to provide notice to the Defendants here. Ex. 2, Hoda Declaration, ¶ 3.

Next, Plaintiff has met the substantive requisites for issuance of a preliminary injunction. To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore*

*v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017). Each of these requisites is addressed in turn below.

Plaintiff makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. She has alleged and provided evidence that the Defendants deceived her and misappropriated her assets in what appears to have been an intentional scam. Compl., ¶¶ 13 – 18; Cole Decl., ¶¶ 3 – 6. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that she will indeed be able to prevail on these claims once a full evidentiary record is developed.

In addition, as in the previous order granting the extant TRO, the Court notes that asset freeze Plaintiff seeks in this instance is permissible in light of her request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same). Plaintiff's claim that her assets can be traced to their present

locations is supported by the blockchain analysis submitted in support of her Motion. Cole Decl., ¶ 5.

Plaintiff has also shown that irreparable harm will ensue absent the restraining order she seeks. The assets at issue could be further transferred to unretrievable locations at any time, with the click of a button. Cole Decl., ¶ 6. Several federal courts have found that this exigency justified issuance of freezing orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[1]

Next, the Court finds that the threatened injury to Plaintiff outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. The Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See, e.g.*, *Licht v. Ling*, No. 3:23-CV-1018, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023) (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6

---

[1] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

(same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court"). In contrast, maintaining the assets at the destination accounts is perhaps Plaintiff's only realistic chance at recovery in this case.

Finally, the Court finds that issuing the injunction is in the public interest. In fact, in this case, the public interest weighs particularly heavily in favor of the requested injunction. As other courts have noted, issuing the relief requested will "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6.

### III.   Preliminary Injunction

Plaintiff has submitted evidence tracing the assets she alleges were stolen from her the Target Accounts, which are the accounts identified by the following markers:

| Recipient in Transactions | Associated Entity | Amount Traced (in USD) |
|---|---|---|
| 0xb4f1c7058ea35690087114f5058ab5b381ce190f8dc072ff6504e722beceec7e<br><br>0x6d1305207103561117cb450ef12362e104722ba8186bfd8f4382277713705c0a | Bitget | $100,800.00 |

| | | |
|---|---|---|
| 0x37e64011b6b6fd8c01db2ee13ce9450562ab4eaf7cee75589ba47712efa4a77c<br><br>0x6cb1f65d97af4d548f839a0343ed7863d2d09963f81f646f1da52c2697bbc468<br><br>0x3c44e4de6499cb3bbaea23bc9f8f8e821eba2a3e470fb01325fd1b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a8f2218c6b9dc9369521ca2058845c4ccba0d37fa<br><br>0x47af66805c960997a3beb50e4285d782546cfdeb6737f01547e4f0238b29886e | Binance | $170,000.00 |

For the reasons set out in the Motion, the Court finds that the Target Accounts should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Target Accounts, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Accounts.

The Court **ORDERS** that Plaintiff shall cause a copy of this Order to be served on the above-listed entities in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving a copy of this Order, these entities shall be restrained and enjoined from disturbing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants' control. Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed blockchain addresses is prohibited. The Court declines to impose a bond.

The preliminary injunction set out in this Order shall continue until trial or further order of the Court.

Dated:  July 7, 2025	Prepared By:

	THE HODA LAW FIRM, PLLC

	_____
	Marshal J. Hoda, Esq.
	Tx. Bar No. 2411009
	Alexander Crous, Esq.
	Tx. Bar No. 24136488
	3120 Southwest Fwy
	Ste 101, PMB 51811
	Houston, TX 77080
	marshal@thehodalawfirm.com
	alex@thehodalawfirm.com
	o. (832) 848-0036

	*Attorneys for Plaintiff*