UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

ANGELA STEINHARDT,                  §
                                    §
      *Plaintiff*,                  §
                                    §
                                    §    CIVIL ACTION NO. 1:25-CV-00303
VS.                                 §    JUDGE MICHAEL J. TRUNCALE
                                    §
ALBERTAI.CLICK, LENA DOE, and       §
JOHN DOES 1 – 20,                   §
                                    §
                                    §
      *Defendants*.                 §

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction. [Dkt. 6]. On June 16, 2025, the Court granted Plaintiff's request for a fourteen-day TRO freezing cryptocurrency exchange accounts that she alleges received assets that were stolen from her by the defendants in this matter. [Dkt. 3]. The Court subsequently extended that TRO for another fourteen days. [Dkt. 5]. Plaintiff now seeks to extend most[1] of the account freezes through trial.

The Court has reviewed Plaintiff's Motion and evidentiary materials. For the reasons set out below, Plaintiff's Motion is hereby **GRANTED**.

## I.    BACKGROUND

Plaintiff's relevant allegations are as follows. In January 2025, Plaintiff applied for an advertised part-time position as a medical director with a plasma company. [Dkt. 1 at ¶ 13]. Shortly thereafter, an individual named Lena contacted Plaintiff via WhatsApp and provided details about a different position involving purchasing merchant products and writing reviews to boost their e-

---

[1] Plaintiff does not seek to extend the freeze of the Coinbase account. [Dkt. 6 at 4 n.6]. In her Motion and at the hearing, Plaintiff informed the Court that one of the accounts frozen pursuant to the Court's TRO, Coinbase, implemented the freeze and provided a document production. *Id.* The production revealed that the account in question was actually Plaintiff's own account, where she received a "credibility withdrawal" from the scammers as part of their scheme. *Id.* Thus, Plaintiff does not request that the Coinbase freeze be extended. *Id.*

commerce scores. *Id*. Lena convinced Plaintiff to proceed by promising a salary of up to $8,000 per month. *Id*.

At Lena's direction, Plaintiff created an account on the albertAI.click platform and was "trained" for her new position by Lena. *Id.* at ¶ 14. Plaintiff was then informed that she had been given a "lucky order" which promised up to ten times her commission. *Id.* Lena explained that Plaintiff needed to "top up" her reserve account to be eligible for this "lucky order." *Id.* Plaintiff then deposited $35 of her own money after being told that it was temporary and she would be able to withdraw her deposit plus commission later. *Id.* Over the next several months, Plaintiff continued to work for the fraudulent entity posing as Albert AI.[2] *Id.* at ¶ 15. Plaintiff was allowed to make occasional withdrawals over time, which provided an illusion of legitimacy to the company. *Id.*

During this period, Plaintiff was informed that she won a "Lucky 7 Anniversary Celebration" bonus, which represented a commission of almost $800,000. *Id.* at ¶ 16. In late February 2025, Plaintiff attempted to withdraw these earnings but was unable. *Id.* Defendants representing themselves as the "Albert AI Finance Department" then informed Plaintiff that in order to access her funds she needed to pay (1) insurance fees in the amount of $71,000, (2) large transaction verification deposits in the amount of $200,000, and (3) exchange fees in the amount of $101,000. *Id.*

After paying these "fees," Plaintiff was still unable to access her funds. *Id.* at ¶ 17. Sensing she had been scammed, Plaintiff contacted the real Albert AI, who then confirmed her suspicions by informing her that albertAI.click was not associated with Albert AI. *Id.* In total, Plaintiff alleges that she lost $372,000 to the scammers. *Id.* at ¶ 18.

After retaining counsel, Plaintiff's blockchain investigator performed a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. [Dkt. 6-1 at ¶ 5]. Plaintiff's investigator was able to trace her

---

[2] At the hearing, Plaintiff's counsel indicated that Albert AI is a real, legitimate company, but the alleged scammers impersonated the company.

allegedly stolen assets to cryptocurrency-exchange accounts that ultimately received the assets she alleges were stolen from her (together the "Target Accounts").  The Target Accounts are as follows:

| Recipient in Transactions | Associated Entity | Amount Traced (in USD) |
|---|---|---|
| 0xb4f1c7058ea35690087114f50 58ab5b381ce190f8dc072ff6504 e722beceec7e<br><br>0x6d1305207103561117cb450e f12362e104722ba8186bfd8f438 2277713705c0a | Bitget | $100,800.00 |
| 0x37e64011b6b6fd8c01db2ee13 ce9450562ab4eaf7cee75589ba4 7712efa4a77c<br><br>0x6cb1f65d97af4d548f839a034 3ed7863d2d09963f81f646f1da5 2c2697bbc468<br><br>0x3c44e4de6499cb3bbaea23bc9 f8f8e821eba2a3e470fb01325fd1 b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a8 f2218c6b9dc9369521ca2058845 c4ccba0d37fa<br><br>0x47af66805c960997a3beb50e4 285d782546cfdeb6737f01547e4 f0238b29886e | Binance | $170,000.00 |

In the instant Motion, Plaintiff asks the Court to order that these cryptocurrency-exchange accounts be frozen through trial, so that she might preserve some assets for recovery.

## II.  ANALYSIS

Plaintiff has met the requirements for issuance of a Preliminary Injunction.

First, Plaintiff has shown that the Defendants had notice of her Motion and its associated hearing as required under Federal Rule of Civil Procedure 65(a)(1).[3] The Hoda Declaration describes the methods used to provide notice to the Defendants here. [Dkt. 6-2 at ¶ 3].

Next, Plaintiff has met the substantive requisites for issuance of a preliminary injunction. To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (citation omitted). Each of these requisites is addressed in turn below.

## A.    LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), conversion, and fraud. She has alleged and provided evidence that the Defendants deceived her and misappropriated her assets in what appears to have been an intentional scam. [Dkt. 1 at ¶¶ 13–18]; [Dkt. 6-1 at ¶¶ 3–6]. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that she will indeed be able to prevail on these claims once a full evidentiary record is developed.

To prove a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962, (2) an injury to her business or property, and (3) that the RICO violation caused this injury. *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023); *see also* 18 U.S.C. § 1964(c) (stating that an individual injured in her business or property by reason of a violation of § 1962 may recover threefold the damages she sustained). To prove a RICO violation, a plaintiff must show that the defendant is a person engaged in a pattern of racketeering activity, connected to the acquisition, establishment, conduct, or control of an

---

[3] Rule 65(a)(1) "does not require service of process, but rather requires notice to the adverse party." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 542 (5th Cir. 2023) (cleaned up) (quoting *Corrigan Dispatch Co. v. Casa Guzman S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)).

enterprise. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Here, Plaintiff's evidence describes the Defendants' "pig-butchering" scam and provides documentation as to how that unfolded. In particular, Plaintiff's Complaint shows how she was deceived into the scam by a person with whom he believed he was developing a professional relationship. [Dkt. 1 at ¶¶ 13–18]. Furthermore, Evan Cole's Declaration attests as to why Defendants' actions reflect those of professional cybercriminals well-versed in these employment pig-butchering scams. [Dkt. 6-1 at ¶¶ 3–4]. As a result of the scam, Plaintiff alleges that she lost assets worth $372,000. [Dkt. 1 at ¶ 18]. Therefore, the Court finds that Plaintiff's RICO claim is likely to succeed on the merits.

Next, under Massachusetts law, "[t]he elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .'" *Grand Pac. Fin. Corp. v. Brauer*, 783 N.E.2d 849, 857 (Mass. App. Ct. 2003) (citing *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 475 N.E.2d 1230 (Mass. App. Ct. 1985)) (second alternation in original). Plaintiff's conversion claim is likely to succeed. Her Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Plaintiff's assets and have not returned them. [Dkt. 1 at ¶¶ 13–18; Dkt. 6-1 at ¶¶ 3–5]. Furthermore, in her briefing, Plaintiff cited a federal cryptocurrency fraud preliminary injunction that similarly found that the plaintiff was likely to succeed on the merits. See *Bullock v. Doe*, No. 23-cv- 3041, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023). Thus, Plaintiff is likely to succeed on the merits of her conversion claim.

Finally, to allege a fraud claim under Massachusetts law, a plaintiff must show "[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage." *Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 913 (Mass. 2017) (citation omitted). Her Complaint and supporting evidence show that that Defendants intentionally and falsely represented that Plaintiff was trading cryptocurrency on a legitimate platform with the intention

of causing her to transfer her assets to the Defendants' control, and that these statements were material

to her. [Dkt. 1 at ¶¶ 13–18]; [Dkt. 6-1 at ¶¶ 3–5]. Further, Plaintiff relied on these representations in

transferring her savings worth about $372,000 to Defendants, which she now seeks to recover. Thus,

Plaintiff is likely to succeed on the merits of her fraud claim.

In addition, as in the previous order granting the extant TRO, the Court notes that asset freeze

Plaintiff seeks in this instance is permissible in light of her request for a constructive trust over specific,

traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See,*

*e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing

asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in

this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo v. Doe*, No.

1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) (issuing asset-

freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk v.*

*Alferov*, No. 2:23-cv-01317-KJM-JDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023)

(same). Plaintiff's claim that her assets can be traced to their present locations is supported by the

blockchain analysis submitted in support of her Motion. [Dkt. 6-1 at ¶ 5].

**B.    IRREPARABLE HARM**

Plaintiff has also shown that irreparable harm will ensue absent the restraining order she seeks.

The assets at issue could be further transferred to unretrievable locations at any time, with the click of

a button. [Dkt. 6-1 at ¶ 6]. Several federal courts have found that this exigency justified issuance of

freezing orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[4]

---

[4] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023)
("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those
transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the
money illegally taken from Plaintiffs."); *Jacobo*, 2022 WL 2052637, at *3 ("Because it would be a simple matter for
[defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and
effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely
to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 1:22-
CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

### C.    BALANCE OF HARDSHIPS

Next, the Court finds that the threatened injury to Plaintiff outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. The Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See, e.g.*, *Licht v. Ling*, No. 3:23-CV-1018, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023) (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court"). In contrast, maintaining the assets at the destination accounts is perhaps Plaintiff's only realistic chance at recovery in this case.

### D.    PUBLIC INTEREST

Finally, the Court finds that issuing the injunction is in the public interest. In fact, in this case, the public interest weighs particularly heavily in favor of the requested injunction. Plaintiff's evidence shows that the devastation wrought by the pig-butchering epidemic is breathtaking. [Dkt. 6-1 at Exh. A]. The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of preliminary injunctive relief. As other courts have noted, issuing the relief requested will "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6 (cleaned up) (citation omitted).

### III.  PRELIMINARY INJUNCTION

Plaintiff has submitted evidence tracing the assets she alleges were stolen from her the Target Accounts, which are the accounts identified by the following markers:

| Recipient in Transactions | Associated Entity | Amount Traced (in USD) |
|---|---|---|
| 0xb4f1c7058ea35690087114f50 58ab5b381ce190f8dc072ff6504 e722beceec7e<br><br>0x6d1305207103561117cb450e f12362e104722ba8186bfd8f438 2277713705c0a | Bitget | $100,800.00 |
| 0x37e64011b6b6fd8c01db2ee13 ce9450562ab4eaf7cee75589ba4 7712efa4a77c<br><br>0x6cb1f65d97af4d548f839a034 3ed7863d2d09963f81f646f1da5 2c2697bbc468<br><br>0x3c44e4de6499cb3bbaea23bc9 f8f8e821eba2a3e470fb01325fd1 b7e9873e0e1<br><br>0xf14b3592ed927893f3f4e76a8 f2218c6b9dc9369521ca2058845 c4ccba0d37fa<br><br>0x47af66805c960997a3beb50e4 285d782546cfdeb6737f01547e4 f0238b29886e | Binance | $170,000.00 |

For the reasons set out in the Motion, the Court finds that the Target Accounts should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Target Accounts, or any business entity through which they act or

which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Accounts.

The Court **ORDERS** that Plaintiff shall cause a copy of this Order to be served on the above-listed entities in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving a copy of this Order, these entities shall be restrained and enjoined from disturbing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants' control. Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed blockchain addresses is prohibited. The Court declines to impose a bond. The preliminary injunction set out in this Order shall continue until trial or further order of the Court.

**SIGNED this 10th day of July, 2025.**

Michael J. Truncale
United States District Judge